# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED SLG FOR
L. WORM
7/25/17

2017 JUL 26 PM 12:33

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

(1) one Apple iPhone, Model number: MN6T2LL/A,
IMEI: 35 202906 307679 1

Case No. 17MJ8758

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein by reference

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846, 952, 960 | Importation and distribution of controlled substances |

The application is based on these facts:

✓ See Attached Affidavit of Special Agent D'Andre Powell

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

D'Andre N. Powell
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/26, 2017

*Judge's signature*

City and state: El Centro, California

Peter C. Lewis, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The property/item to be searched is described as:

1. **TARGET TELEPHONE #1 "(TT#1)"**
   (1) one Apple iPhone
   Model number: MN6T2LL/A
   IMEI: 35 202906 307679 1



## ATTACHMENT A - CONTINUED

## PROPERTY/ITEMS TO BE SEARCHED

### 2. TARGET TELEPHONE #2 "(TT#2)"
(1) one ZTE Cellular Device
Model number: Z832
IMEI: 869627024693004



Belonging to Heidi ROBLES, seized pursuant to her arrest for violation of Title 21 United States Code 952 and 960, Importation of Controlled Substances on June 11, 2017. The cellular phones listed above are currently in the possession of the Homeland Security Investigations, Assistant Special Agent in Charge (ASAC) Calexico Office, 2051 North Waterman Avenue, Suite 100, El Centro 92243 (Evidence Vault).

## ATTACHMENT B

Authorization to search the Target Telephone #1 and Target Telephone #2 described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Telephone #1 and Target Telephone #2. The seizure and search of Target Telephone #1 and Target Telephone #2 will be conducted in accordance with the affidavit submitted in support of the warrant.

The following evidence to be searched for and seized pertains to violations of Title 21, United States Code Section 841 (a)(1) – Possession of a Controlled Substance with the Intent to Distribute, 952 and 960, Importation of Controlled Substances:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to import a controlled substance into the United States, and possess a controlled substance with the intent distribute in the United States;

   b. tending to identify other facilities, storage devices, or services- such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to possess with intent to distribute controlled substances in the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in possession with intent to distribute controlled substances in the United States;

   d. tending to identify travel to or presence at locations involved in the possession of controlled substances with intent to distribute such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the subject phone; or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

  2. Search and seize all stored electronic and wire communications and information in memory within the mobile device, including email, instant messaging, or other communications, and including any content that may be synchronized to or on the device from any service or application utilized by the subject as of the date of execution of the search warrant (i.e., the date of the password reset).



SEE FOR
L. WORM
7/25/17

FILED

2017 JUL 26 PM 12: 33

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF:

(1) one Apple iPhone
Model number: MN6T2LL/A
IMEI: 35 202906 307679 1

(1) one ZTE Cellular Device
Model number: Z832
IMEI: 869627024693004

Case No.: '17MJ8758

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

## AFFIDAVIT

I, D'Andre N. Powell, Special Agent with the United States Drug Enforcement Administration, having been duly sworn, state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Drug Enforcement Administration for the following targets: one Apple iPhone, Model Number: MN6T2LL/A, IMEI: 35 202906 307679 1 (Target Telephone #1), and one ZTE cellular device, Model Number: Z832, IMEI: 869627024693004 (Target Telephone #2) seized from Heidi ROBLES ("ROBLES") on June 11, 2017.

2. Target Telephone #1 and Target Telephone #2 were seized from ROBLES on June 11, 2017, subsequent to her arrest for importation of methamphetamine. Based on the below facts, it is believed that Target Telephone #1

1

and Target Telephone #2 were used by ROBLES to communicate with co-conspirators before and during a drug smuggling event on June 11, 2017. On June 11, 2017, ROBLES was arrested at the West Port of Entry located in Calexico, California, importing a controlled substance, described as approximately .269 kilograms of methamphetamine. Probable cause exists to believe that Target Telephone #1 and Target Telephone #2 contain evidence relating to violations of Title 21, United States Code Sections 841, 846, 952, and 960. The specified telephones are currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Assistant Special Agent in Charge (ASAC) Calexico Office, 2051 North Waterman Avenue, Suite 100, El Centro 92243 (Evidence Vault). Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3. Based upon my training, experience and the facts and opinions set forth in this Affidavit, I believe the following items will be found in the cellular telephone to be searched:

a. Telephone numbers and direct connect numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses;

b. Call and direct connect history information, including Internet Protocol addresses accessed by the device or accessing the device;

c. Stored photographs, videos and text messages;

d. Stored electronic mail, including attachments, and voice messages and other recordings;

e. Web-browsing history and any stored web pages;

f. Stored documents and other files;

1       g.    Stored geo-location information; and,

2       h.    Data stored in any application.

These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 841, 846, 952, and 960; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

## EXPERIENCE AND TRAINING

4. I, D'Andre Powell, am employed as a Special Agent with the Drug Enforcement Administration (DEA) and have so been employed since May 2014. I am currently assigned to the Imperial County District Office (ICDO) Enforcement Group 52. Upon being hired as a DEA Special Agent, I attended an eighteen week DEA academy in Quantico, Virginia, where I received training in all aspects of narcotics investigations, including, but not limited to, the enforcement of drug laws, investigation of drug trafficking, drug recognition and terminology, case management undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance. Furthermore, I was certified in November 2014 by the California State Attorney General in the practical, technical, and legal aspects of court ordered wiretaps as authorized under California Penal Code Section 629 et seq.

5. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal.

6. I am familiar with and have used many of the traditional methods of investigation, including, visual surveillance, informant and witness interviews, defendant debriefings, undercover operations, and the seizure of drug evidence.

3

7. I have participated in drug investigations leading to the seizure of illegal narcotics and the arrests of individuals for drug law violations. Although the nature of my ongoing work with DEA requires that I keep apprised of recent trends and developments involved in the investigations of narcotics traffickers, I regularly communicate with agents from the United States Border Patrol, Customs and Border Protection, Homeland Security Investigations, and various other local law enforcement officers. Furthermore, I have discussed their investigative techniques and experiences with them operating within the Southern District of California.

8. Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

9. I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

4

10. By virtue of my employment as a Special Agent with DEA, I have performed various tasks, which include, but are not limited to:

    a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    b. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

    c. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics.

11. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine and cocaine. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations,

5

and the opinions stated below are shared by them. Furthermore, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

13. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

6

      g.    Drug smugglers will use cellular telephones to coordinate plans of importing narcotics in advance.

## FACTS SUPPORTING PROBABLE CAUSE

14. On June 11, 2017, at approximately 11:00 p.m., Heidi ROBLES, a United States citizen, presented herself for inspection through the pedestrian lane at the Calexico, California West Port of Entry. During primary inspection, a Customs and Border Protection Officer (CBPO) received a negative oral Customs declaration from ROBLES. ROBLES advised the CBPO she was in Mexico having dinner with her husband. While speaking with ROBLES, the CBPO observed ROBLES begin to tremble. The CBPO referred ROBLES to the pedestrian secondary inspection area for further inspection and a personal search.

15. In the pedestrian secondary area prior to conducting a personal search, a CBPO asked ROBLES if she was wearing a pad or tampon. ROBLES informed the CBPO she was wearing a pad. The CBPO began searching ROBLES' person. While conducting the search of ROBLES' groin area, the CBPO felt a hard object. ROBLES proceeded to look at the CBPO and state she was wearing a tampon also. The CBPO instructed ROBLES to keep her hands on the wall to verify what she had in her groin area, ROBLES sated she had something inside her vagina.

16. ROBLES was subsequently escorted to a private cell for a further search. While in the private cell ROBLES voluntarily removed two cellophane-wrapped packages from her vaginal cavity as witnessed by two CBPOs. A Human and Narcotics Detector Dog (HNDD) was requested to perform a sniff of the packages to which the HNDD provided a positive alert. One package was randomly cut open revealing a crystal-like substance, which field tested positive for the characteristics of methamphetamine. The two packages had a total weight of approximately .269 kilograms.

17. ROBLES was arrested following the discovery of the narcotics concealed inside of her person.

18. Incident to the arrest of ROBLES, Target Telephone #1 and Target Telephone #2 were seized by federal authorities from her.

19. Based upon my experience and investigation in this case, I believe that ROBLES, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import, and possess with intent to distribute methamphetamine or some other prohibited drugs. Based on my experience investigating narcotics smugglers, I also believe that ROBLES may have used Target Telephone #1 and Target Telephone #2 to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside of the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which may identify other persons involved in narcotics trafficking activities.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ROBLES and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein. Based on my training and experience, I know that telephone contact between narcotic smugglers and other co-conspirators can begin months before drugs are packaged and loaded onto body carriers and/or other means of transportation. I know that individuals involved in the smuggling of narcotics will cross into the United States a number of times without

narcotics to establish a crossing history before crossing with narcotics. I also know between September 4, 2016 and June 12, 2017, ROBLES has crossed into the United States 30 times. Of the 30 times in which ROBLES have crossed into the United States, 12 have been through the pedestrian lane.

Procedures For Electronically Stored Information

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephones and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

24. For an Android cellular telephone and tablet, if necessary, and if the device can establish a data connection to the mobile network of the underlying service provider by law enforcement, Google is ordered to reactivate the Google account associated with the mobile device for the limited purpose of complying with the search warrant. Before beginning the unlock procedure, Google shall coordinate the time of executing the unlock procedure with the law enforcement officer executing the search warrant (hereafter "the law enforcement officer") to ensure all parties are prepared to conduct the device unlock.

25. Google is directed to provide a single password reset for the mobile device, to provide the new password to the law enforcement officer, and upon unlocking the target mobile device, again reset the Google account password promptly upon notice from the law enforcement officer that the unlocking of the phone is complete (but in any event no longer than 15 minutes), without providing it to the law enforcement officer or agency so as to prevent future access. The reset process need not be unobtrusive to the subject and the subject may receive notice to one or more accounts of the reset as a part of this unlock process; such notice is not a violation of any seal or nondisclosure requirement.

26. The Drug Enforcement Administration or any other law enforcement entities shall not use the new password to attempt to access the subject's online accounts other than as synchronized on and stored in memory within the target device at the time of execution of the warrant.

## GENUINE RISKS OF DESTRUCTION

27. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN DATA

28. On June 11, 2017, the United States was unable to obtain data from Target Telephone #1 and Telephone #2, by means of a search incident to arrest due to ROBLES not giving consent.

## CONCLUSION

29. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that defendant Heidi ROBLES used Target Telephone #1 and Target Telephone #2 to facilitate the offense of importing, and possessing methamphetamine with the intent to distribute. These telephones were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841, 846, 952 and 960.

30. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by ROBLES continues to exist on Telephone #1 and Target Telephone #2.

31. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the

facts set forth herein, I know that the items to be seized set forth supra are likely to be found in the property to be searched described in Attachment B (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with DEA, or any other law enforcement personnel to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*
D'Andre Powell
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 26th day of July 2017.

*[signature]*
HONORABLE Peter C. Lewis
United States Magistrate Judge

12